IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Syscan, Inc., | NO. C 07-01603 JW |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| Plustek, Inc., et al., | |
| Defendants. / | |

## I. INTRODUCTION

Syscan, Inc. ("Plaintiff") brings this diversity action against Plustek, Inc. ("Plustek") and Futurewell Holding Limited ("Futurewell") (collectively, "Defendants"), alleging breach of a patent license agreement ("License Agreement") between Plaintiff and Defendants. Plaintiff alleges that, in December 2006, Defendants stopped paying royalties that were owed to Plaintiff under the License Agreement.

Presently before the Court is Defendants' Motion for Summary Judgment.[1] The Court conducted a hearing on March 23, 2009. Based on the papers submitted to date and oral argument, the Court DENIES Defendants' Motion for Summary Judgment.

## II. BACKGROUND

**A.  Undisputed Facts**

Plaintiff owns U.S. Patent Numbers 6,054,707 ("the '707 Patent"), 6,275,309 ("the '309 Patent") and 6,459,506 ("the '506 Patent"), which concern technology for light-weight mobile

---

[1] (Defendants Plustek Inc. and Futurewell Holding Limited's Motion for Summary Judgment, hereafter, "Motion," Docket Item No. 46.)

scanners.[2] On January 6, 2003, Defendants filed a declaratory judgment action in the Central District of California against Plaintiff ("January 2003 Litigation"). (Dang Decl., Ex. A.) Defendants sought a declaration that one of Defendants' scanner products, not at-issue in this case, did not infringe the '506, '707, and '309 Patents. (Id.)

As a means of settling the January 2003 litigation, Plaintiff and Defendants entered into the October 27, 2003 License Agreement. The patents covered under the License Agreement are the '506, '707, and '309 Patents, and the "corresponding China patents and any of its reissue, extension or addition to said patents."[3] (Darwin Decl., Ex. A § 1.1.) Under the License Agreement, Plaintiff granted Defendants "a non-exclusive and non-transferable license under the Patents to sue, reproduce and modify the Technology specified in this agreement and to market, sell and distribute the Goods directly or indirectly within the Territory."[4] "Goods" are defined as:

> the portable/mobile scanner or portable/mobile optical device that is produced by [Defendants] under [their] own trade names and/or under the [Defendants'] trade names for marketing, sales and distribution within the Territory and that applies the Technology comprising the following three features required or covered by the Patents: Universal Serial Bus ('USB') interface with bus power, colored lights generated from at least two different emitted lights, and sheetfed.

(Id., Ex. A § 1.3.) "Territory" under the Agreement includes "the United States of America and China." (Id., Ex. A § 1.4.)

Under § 3 of the License Agreement, Defendants agreed to "pay One Dollar and Fifty Cents in United States Denomination (US $1.50) as running royalty to [Plaintiff] for each unit piece of Goods sold or distributed directly or indirectly in the Territory . . . ." (Darwin Decl. Ex. A § 3.1.) Defendants further agreed to "make written quarterly statements, on March 31st, June 30th,

---

[2] (Declaration of Sang N. Dang in Support of Defendants' Motion for Summary Judgment, Ex. A, hereafter, "Dang Decl.," Docket Item No. 44.)

[3] The License Agreement defines "Technology" as Plaintiff's "US and China Patents stated in 1.1 of [the License Agreement]." (Darwin Decl., Ex. A at 1.)

[4] (Declaration of Darwin Hu in Opposition to Defendants' Motion for Summary Judgment, Ex. A, hereafter, "Darwin Decl.," Docket Item No. 63.)

2

September 30th and December 31st of each year during the term of the agreement, specifying the quantity of the Goods sold or distributed by it in the Territory." (Id., Ex. A § 3.2.)

In August 2004, Plaintiff and Defendants discovered that, at the time they entered into the License Agreement, Plaintiff did not own any patent or patent applications in China. The parties discovered the following: On September 15, 1999, Plaintiff and Shenzhen Syscan Techonology Co. ("Shenzhen") had jointly filed Chinese Patent Application 99120321.6 ("CPA 321.6"), the Chinese patent that Defendants contend corresponds to the '309 Patent. (Darwin Decl. ¶ 8.) On October 31, 2001, Syscan assigned its rights in CPA 321.6 to Shenzhen. (Id.) On November 2, 2001, Shenzhen had filed Chinese Patent Application 01137769.0 ("CPA 769.0"), the Chinese patent Defendants contend corresponds to the '506 Patent. Defendants were the sole owner of CPA 769.0. (Id. ¶ 9.) In an effort to facilitate a license negotiation between Shenzhen and Defendants, Plaintiff assigned its right under the "China portion" of the License Agreement to Shenzhen. (Id. ¶ 11.)

**B.     Procedural History**

On March 21, 2007, Plaintiff filed this action against Defendants, alleging breach of contract. (See Docket Item No. 1.) On October 27, 2009, Defendants filed a motion for summary judgment but the Court delayed hearing on the motion and granted an extension to conduct further discovery. (See Docket Item Nos. 36, 50.) On January 15, 2009, Defendants filed an amended motion for summary judgment. (See Docket Item No. 54.)

Presently before the Court is Defendants' Motion for Summary Judgment.

## III.  STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986).

3

1  The moving party "always bears the initial responsibility of informing the district court of
2  the basis for its motion . . . ." Id. at 323. "The judgment sought should be rendered if the pleadings,
3  the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue
4  as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.
5  P. 56(c). The non-moving party "may not reply merely on allegations or denials in its own pleading;
6  rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts
7  showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

8  When evaluating a motion for summary judgment, the court views the evidence through the
9  prism of the evidentiary standard of proof that would pertain at trial. Anderson v. Liberty Lobby
10 Inc., 477 U.S. 242, 255 (1986). The court draws all reasonable inferences in favor of the non-
11 moving party, including questions of credibility and of the weight that particular evidence is
12 accorded. See, e.g., Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1992). The court
13 determines whether the non-moving party's "specific facts," coupled with disputed background or
14 contextual facts, are such that a reasonable jury might return a verdict for the non-moving party.
15 T.W. Elec. Serv. v. Pac. Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). In such a case,
16 summary judgment is inappropriate. Anderson, 477 U.S. at 248. However, where a rational trier of
17 fact could not find for the non-moving party based on the record as a whole, there is no "genuine
18 issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

20 Defendants move for summary judgment on the grounds that (1) the License Agreement is
21 void and unenforceable, and (2) Defendants' scanners at-issue do not use the technology claimed
22 under the '309, '506 and '707 Patents.

**A.    Enforceability of the License Agreement**

24 Defendants contend that the License Agreement is void because, at the time of its formation,
25 the parties were mutually mistaken as to Plaintiff's ownership of the Chinese patents. (Motion at
26 14.) Defendants further contend that the License Agreement is unenforceable because Plaintiff has

4

breached a number of the provisions of the License Agreement. (Motion at 15-16.) Plaintiff contends that the "China portions" of the License Agreement are severable and that Plaintiff has not breached the Agreement.[5] The Court first considers whether the License Agreement is void in light of the parties' mutual mistake regarding Plaintiff's ownership of the Chinese patents.

### 1. Mutual Mistake

The formation of a contract requires parties capable of consent to mutually assent to the agreement. Cal. Civ. Code § 1550; ASP Properties Group v. Fard, Inc., 133 Cal. App. 4th 1257, 1268-69 (2005). "Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings." ASP Properties, 133 Cal. App. 4th at 1269. Whether the parties mutually assented to a contract is a question of fact. Id.

A contract is voidable and subject to rescission for lack of mutual assent when consent to the contract was the result of a mutual mistake of fact. Cal. Civ. Code §§ 1567-68, 1689(b); Guthrie v. Times-Mirror Co., 51 Cal. App. 3d 879, 884 (1975). Under California Civil Code § 1577, a mistake of fact is:

> a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: (1) An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or (2) Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not.

To make a contract voidable, a mistake must "affect an essential element of the contract and [be] harmful to one of the parties." Guthrie, 51 Cal. App. 3d at 884. A provision of a contract is an essential element for purposes of the mutual mistake doctrine if it reflects a mutual mistake "as to a basic fact which induced [the party seeking to void the contract] to enter into the [contract]." Williams v. Pucinelli, 236 Cal. App. 2d 512 (1965).

---

[5] (Syscan, Inc.'s Memorandum of Point and Authorities in Opposition to Defendants' Motion for Summary Judgment, hereafter, "Opposition," Docket Item No. 63.)

5

1  Although, the intentions of contracting parties is normally "to be ascertained from the
2 writing alone, if possible," extrinsic evidence is necessary in the mutual mistake context because
3 "the court must divine the true intentions of the contracting parties and determine whether the
4 written agreement accurately represents those intentions." Hess v. Ford Motor Co., 27 Cal. 4th 516,
5 524-25 (2002). Whether there was a mutual mistake sufficient to make a contract voidable is a
6 question of law only where "the extrinsic evidence is not in conflict;" otherwise, it is a question of a
7 fact. See id. at 526.

8  In this case, the parties do not dispute that they were mutually mistaken as to Plaintiff's
9 ownership of the Chinese patents. (Motion at 14; Opposition at 1-2, 7.) The parties' dispute centers
10 on whether the inclusion of the Chinese patents in the licensed technology was an essential term to
11 the License Agreement.[6] To show that they would not have entered this contract absent the
12 provisions concerning the Chinese patents, Defendants present emails containing the various drafts
13 of the License Agreement, tracking the iterations circulated between Plaintiff and Defendants.[7] The
14 original version of the License Agreement, and every subsequent draft, included the terms
15 purporting to grant Defendants a license for Plaintiff's Chinese patents and extending the license to
16 the use of Plaintiff's technology in China. (Ku Decl., Ex. B.)

17  Defendants also present deposition testimony from Plustek's President, Karen Ku, who
18 negotiated the License Agreement on behalf Defendants, in which she explains that China is "an
19 important manufacturing base" and "also a very important sales market" for Defendants.[8] Ku further

---

[6] Plaintiff also contends, in the alternative, that the China portions of the contract are severable under the Severability clause of the License Agreement. The Severability clause, however, in unavailing with regard to whether the contract is void for mutual mistake because it provides as follows: "If any provision of this Agreement is held to be unenforceable . . . such holding will not affect the validity of the other provisions . . . unless the parties deem the unenforceable provision to be *essential* to this Agreement, in which case either party may terminate this Agreement . . . ." (Darwin Decl., Ex. A § 12 (emphasis added).)

[7] (Declaration of Karen Ku, Ex. B, hereafter, "Ku Decl.," Docket Item No. 43.)

[8] (Supplemental Declaration of Sang N. Dang in Support of Defendants' Motion for Summary Judgment, Ex. M at 153-54, Docket Item No. 72.)

United States District Court
For the Northern District of California

explains in her declaration that, at the time of the License Agreement negotiations, "both the China and the United States markets were essential to Plustek's business. . . . Therefore, Plustek negotiated for the ability to sell its products in China and the United States." (Ku Decl. ¶ 9.) Ku's declaration is corroborated by the language of the contract, which is not limited to only the China patents corresponding to the '309, '506 and '707 Patents, but which extends to "any of its reissue, extension or addition to said patents." (Darwin Decl., Ex. A § 1.1.)

On the basis of Defendants' extrinsic evidence, a reasonable jury could find that the license to use the Chinese patents was an essential term of the License Agreement. The fact that every draft of the License Agreement contained a license grant to Defendants to the Chinese patents and defined the "Territory" of the License Agreement to include China, indicates the primacy of the Chinese intellectual property to their deal. Moreover, Ku's testimony that China was an important manufacturing and sales base for Plustek's products evidences Defendants' motive for ensuring a license under the Chinese patents.

In response, Plaintiff provides the declaration of Darwin Hu, Plaintiff's CEO, who negotiated the License Agreement on behalf of Plaintiff, stating the following:

> [b]ecause the License Agreement was mainly concerned about the settlement of the Syscan Patents in U.S. [sic] and the [January 2003 Litigation], I did not consider China and the corresponding China patents important at all. I thought it was just a sweetener requested by Plustek when it was trying to settle with Syscan. Indeed, Karen Ku and Plustek never discussed anything with me and Syscan about the China territory or the corresponding China patents, their identities and/or scope, or anything related thereto during the negotiation of the license agreement.

(Darwin Decl. ¶ 7.) Plaintiff also presents deposition testimony from Karen Ku in which she explains that, at the time of the License Agreement, she never checked Chinese public records to determine if Plaintiff actually owned the Chinese patents because "I believed Darwin [Hu] and I feel that we are kind of stupid."[9] Finally, Plaintiff provides the Royalty Quarterly Statements submitted by Defendants to Plaintiff pursuant to the License Agreement. (Darwin Decl., Exs. D, E.) These

---

[9] (Declaration of Yung-Ming Chou in Opposition to Defendants' Motion for Summary Judgment, Ex. A at 85, Docket Item No. 47.)

7

1 statements indicate that Defendants paid Plaintiff the royalty owed under the License Agreement for
2 sales of products covered by Plaintiff's U.S. Patents from October 2004 through March 2005.  (Id.)

3      When presented against Defendants' evidence, Plaintiff's evidence establishes a genuine
4 issue of material fact as to whether the license to the Chinese patents was an essential term of the
5 License Agreement.  The declaration of Plaintiff's CEO, Darwin Hu, stating that he never discussed
6 the China patents and China territory with Defendants is evidence upon which a reasonable jury
7 could determine that Defendants did not consider the Chinese patents essential to the License
8 Agreement.  Karen Ku's testimony admitting that she never checked Chinese public records to
9 determine who owned the Chinese patents at-issue further indicates that Defendants did not, at the
10 time of the License Agreement, view the Chinese patents as essential.  Furthermore, Defendants
11 continued to pay Plaintiff royalties for use of the '309, '506 and '707 Patents through March 2005
12 despite learning that Plaintiff did not own the Chinese patents seven months earlier in August 2004.
13 (Darwin Decl., Ex. D, E.)  Finally, aspects of the language in the License Agreement and the
14 surrounding circumstances corroborate Plaintiff's evidence that Defendants did not consider the
15 Chinese patents to be essential.  The License Agreement never specifically identifies the Chinese
16 patents.

17      In light of the extrinsic evidence presented by Plaintiff, a reasonable jury could infer that the
18 parties' omission of the Chinese patent numbers in the contract was a manifestation of the Chinese
19 patents' non-essential nature.  Moreover, the License Agreement arose as part of a settlement
20 concerning litigation over the '309, '506 and '707 Patents.  Thus, the Court finds a genuine issue of
21 material fact exists as to whether the Chinese patents were essential to Defendants' assent.

22      Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on the ground
23 of mutual mistake.

24      **2.**     **Plaintiff's Breach of the License Agreement**

25      Defendants contend that the License Agreement is unenforceable because Plaintiff breached
26 a number of provisions in the Agreement.  (Motion at 15-16.)  Specifically, Defendants contend that

8

Plaintiff breached the License Agreement by entering into it without owning the Chinese patents and by refusing to indemnify certain of Defendants' customers. (Id.)

A breach of contract action requires a plaintiff to show (1) the existence of a contract, (2) performance by plaintiff, or excuse for nonperformance, (3) a failure by the defendant to satisfy some provision of the contract, and (4) the plaintiff was damaged as a result of the defendant's breach. First Commercial Mortgage Co. v. Reece, 89 Cal. App. 4th 731, 745 (2001).

### a. Plaintiff's Lack of Ownership of the Chinese Patents

As discussed above, Plaintiff's attempt to license patents that they did not own concerns the formation of the License Agreement. Plaintiff's mistake of fact prior to entering the contract does not constitute a breach of the License Agreement because a breach requires the existence of a contract. First Commercial, 89 Cal. App. 4th at 745.

### b. Plaintiff's Failure to Indemnify Defendants' Customers

Here, Defendants submit evidence indicating that Shenzen, the owner of the Chinese patents, had asserted infringement claims in China against some of Defendant Plustek's customers based on the Chinese patents. (Ku Decl. ¶¶ 19, 28-29.) Defendants contend that, under the indemnification clause in the License Agreement, Plaintiff should have held Plustek's customers harmless. (Motion at 15.) The indemnification clause of the License Agreements provides that

> Licensor agrees to indemnify, defend and hold Licensee harmless against all suits, actions, costs, expenses, damages, settlements, judgments, and other liabilities resulting from claims by third parties that the Technology it licensed to Licensee infringes upon any patent rights or any intellectual property of third parties.

(Darwin Decl., Ex. A § 5.) The plain, unambiguous, language of the indemnification clause encompasses only the "Licensee"–i.e. Defendants. Further, the indemnification provision only concerns "the Technology it licensed to Licensee." As discussed above, the parties agree that Plaintiff did not actually grant Defendants a license to the use the Chinese patents. Thus, the Court finds that Plaintiff's failure to indemnify Defendants' customers for infringement claims based on the Chinese patents is not a breach of the License Agreement's indemnification clause.

9

Accordingly, the Court DENIES Defendants' Motion for Summary Judgment on the ground that Plaintiff's breached the License Agreement.

**B.     Defendants' Non-Use of the '305, '506 and '707 Patents**

Defendants contend that summary judgment is appropriate on the ground that their scanners do not practice the inventions of the '305, '506 and '707 Patents. This part of the motion touches on possible claim constructions issue and thus, it is DENIED as premature. Defendants may renew this issue once the Court conducts a proper <u>Markman</u> hearing.

## V.  CONCLUSION

The Court DENIES Defendants Motion for Summary Judgment.

Dated:  July 9, 2009

JAMES WARE
United States District Judge

10

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Sang Ngoc Dang sdang@koslaw.com
Vy Hoang Vu Vvu@koslaw.com
Yung-Ming Chou chouyung@aol.com

**Dated: July 9, 2009**                              **Richard W. Wieking, Clerk**

                                                   **By:   /s/ JW Chambers**
                                                       **Elizabeth Garcia**
                                                       **Courtroom Deputy**
United States District Court
For the Northern District of California